IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jess R. Burdine,                                                   Case No. 3:09cv1026

           Plaintiff

       v.                                                          ORDER

Franklin W. Kaiser, et al.,

           Defendants

This is a case involving the alleged use of unreasonable force against the deceased, Craig Burdine, in violation of his constitutional rights and state law. Plaintiff Jess Burdine ("Administrator") is the decedent's father and administrator of his estate. He has brought suit against Defendants Sandusky County, the City of Fremont, and various police officers and emergency medical technicians (EMTs) employed by both.

Pending are motions for summary judgment by the County and City. [Docs. 140, 142]. For the reasons that follow, I grant both motions and dismiss all of plaintiff's claims with prejudice.

**Factual Background**

On August 11, 2007, at approximately 3:20 a.m., Fremont police officers Lester W. Daniels, Ty Conger, Michael Dickey and Anthony S. Emrich responded to a call regarding a fight on

Sycamore Street. Officer Daniels was first to the scene, and found decedent Craig Burdine pacing in the street, seemingly angry. When Daniels spoke to Burdine, Burdine lunged at him. Daniels, seeking to arrest Burdine, grabbed his left arm. Officer Dickey grabbed Burdine's right arm, and the officers together wrestled a struggling Burdine to the ground.

Despite repeated requests from the officers to calm down, Burdine did not, and Officer Conger came over to help with the arrest. The officers repeatedly told Burdine to put his hands behind his back, but he did not. Dickey informed Burdine that he would pepper spray Burdine if he did not stop resisting, but to no avail. Dickey then pepper sprayed Burdine once in the face, which subdued him sufficiently to place him in handcuffs.

Burdine still resisted, trying to kick the officers and spitting on Conger's arm. The officers were finally able to get the still-struggling Burdine into Daniels' cruiser, although Burdine kicked Daniels as they did so. None of the officers noticed any injury to Burdine at this point.

Officer Emrich, the senior officer on duty that night, had arrived by then. He told Daniels and Dickey to take Burdine to the jail, as his behavior indicated he would not be compliant with normal booking procedures.[1] While the officers were transporting Burdine, Officer Jason Kiddey, also on duty, heard of the arrest on the radio and followed them to the jail in his cruiser.

The officers arrived at the Sandusky County Jail at about 3:30 a.m. Captain Diane Blue was the senior corrections officer on duty. Also at the jail were Sergeant Terry Myers and Deputy John White, road patrol officers who stopped at the jail to prepare reports, Deputy Tina Tack-Anderson, a dispatcher-in-training, and Correctional Deputy Frank Kaiser.

---

[1] Emrich was previously familiar with Burdine, both from a prior November, 2005, arrest and as his relative through marriage.

2

The Fremont officers informed the Sandusky officers that Burdine had been maced, liked to spit, and would likely have to be dragged from the car. On arrival, Burdine refused to get out of the car or stand once the officers pulled him out.

Deputy Kaiser noticed Burdine was suffering aftereffects from the pepper spray. He offered to wash the spray from Burdine's eyes once Burdine relaxed. Kaiser and the Fremont officers then carried Burdine into the clothing issue and shower room area to rinse the spray from his eyes.

The officers, followed by Deputy White, placed Burdine on the floor and removed his handcuffs. Once the handcuffs were off, Burdine began making martial arts moves, cocked his arm back in a punching motion, and moved toward the officers. At some point, Burdine sat back down again, and Kaiser and another officer attempted to lift him up and into the shower. Burdine responded violently, swinging his arms and attempting to bite and kick. Burdine managed to bite Kaiser, and Dickey grabbed the top of Burdine's forehead to keep him from biting any further.

The officers then attempted to reapply the handcuffs, and Burdine continued to resist. While the officers attempted to subdue Burdine, he repeatedly chanted, "I hate God."

Sergeant Myers warned Burdine that if he did not relax, Myers would have to use a taser on him. Myers then applied the taser in drive stun format to the back of Burdine's left leg – seemingly to no effect. Myers warned Burdine that if he did not stop resisting, Myers would use the taser a second time. Burdine then kicked White in the chin, and Myers applied the taser again on Burdine's lower back. Burdine continued to resist, Myers issued a third warning, and Myers again applied the taser to the back of Burdine's leg. Burdine continued to resist all efforts to keep him under control.

Kaiser and another officer then managed to draw Burdine's arms close enough to handcuff him. To hold Burdine in place, Kaiser, who weighed 350 pounds at the time of these events,

periodically placed a knee in Burdine's back, applying enough pressure to keep Burdine from rising. While Kaiser was on top of Burdine, Burdine told Kaiser that he was a "pansy", and vomited a brownish liquid. Burdine also grabbed one of Kaiser's fingers and twisted it severely. Kaiser then moved to Burdine's side and maintained a hold on his wrists as Burdine continued chanting and making other noises.

Soon thereafter, EMTs John Griggs and Jessica Berlekamp-Crowell arrived. Griggs checked on Burdine in the shower room and noted no problems with Burdine's breathing. Burdine's pulse did not seem unusually high or low, but his muscles seemed tense. Berlekamp-Crowell saw bubbles at Burdine's mouth, and noted that he appeared to be breathing. Myers warned the EMTs about Burdine's vomiting. The EMTs placed Burdine on a backboard in a prone position to avoid choking from any future vomitng, and he began to settle down, still breathing with normal coloring.

As the EMTs rolled Burdine out of the jail, he became unresponsive and stopped breathing. Berlekamp-Crowell could not detect a pulse. The officers removed Burdine's handcuffs, and the officers and EMTs began CPR and other lifesaving procedures as they rushed Burdine to the hospital. On arrival, Burdine was in cardiac arrest. Further medical treatment was unsuccessful, and the hospital pronounced him dead at approximately 4:30 a.m.

Dr. Cynthia Beisser of the Lucas County Coroner's Office performed Burdine's autopsy. She determined that he died of acute drug intoxication – namely, ethanol and methamphetamines -- during a drug-induced delirium. Alcohol, marijuana and methamphetamines were all in Burdine's system. Beisser also found a purple contusion on the left side of Burdine's neck, blood in his sternocleidomastoid muscles and the adjacent soft tissue, and a fracture of his left thyroid cartilage.

Dr. Michael M. Baden, plaintiff's expert, reviewed the medical evidence and first testified that Burdine died from compression around his neck; he later sought to revise that opinion to say that compression of either Burdine's neck or back could have resulted in the fatal injury.

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

Plaintiff alleges nine counts against defendants. Under 42 U.S.C. § 1983, he alleges:

- wrongful death, a survival action,
- unconstitutional policies and customs,

5

- inadequate training and supervision,[2] and

- conspiracy.

Under Ohio law he alleges:

- wrongful death,

- gross negligence and

- negligence.

Plaintiff concedes that his § 1983 wrongful death, conspiracy and policy and custom/inadequate training claims are unsustainable both as a matter of law and due to insufficient evidence. I agree.

The only remaining claims, therefore, are a § 1983 survival action, and wrongful death, gross negligence and negligence claims under Ohio law.

The defendants are split into two groups: those affiliated with the City of Fremont (the Fremont defendants) and those affiliated with Sandusky County (the Sandusky defendants). The Fremont defendants consist of the city itself, former Police Chief Monte Huss, current chief Timothy Wiersma, and Fremont police officers Lester W. Daniels, Ty Conger, Michael P. Dickey,[3] Anthony S. Emrich and Jason P. Kiddey.

The Sandusky defendants consist of the county itself, Sheriff Kyle Overmyer, Correctional Deputy Franklin W. Kaiser, Deputy Tina Tack-Anderson, Deputy John C. White, Sergeant Terry

---

[2] Plaintiff combines his unconstitutional policy and custom claims with his inadequate training and supervision claims, and brings them as three separate counts against the City of Fremont, Sandusky County and the Sandusky County Sheriff, along with their respective officials.

[3] Dickey is a former officer.

6

Myers, Captain Diane Blue, Director of Emergency Medical Services for Fremont County Jeff Jackson, and EMTs John Griggs and Jessica Berlekamp-Crowell.

### A. Qualified Immunity/Section 1983 Liability

Plantiffs bring a single count under 42 U.S.C. § 1983 – a survival action alleging excessive force in violation of the Fourth Amendment. However, defendants have affirmatively pled qualified immunity from any such liability.[4]

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In the Sixth Circuit, this inquiry is slightly more particularized. In addition to the violation of a statutory or constitutional right and the clear establishment of that right, courts also inquire "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient

---

[4] Plaintiff's excessive force claim can only be pled against defendants capable of having exerted such force on Burdine. The City of Fremont and Sandusky County, therefore, cannot be sued under this theory of liability and summary judgment is granted in their favor as to this claim.

7

evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).[5]

The plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005). Should plaintiff fail to meet his burden as to either element, the government official will have immunity from suit.

An "objective reasonableness" standard governs alleged violations of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. The court must view the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Renz v. Willard Police Dept.*, 2010 WL 3789563, *2 (N.D. Ohio) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996)).

A court must analyze each defendant's action separately, rather than collectively. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Defendants Huss, Wiersma, Emrich, Kiddey, Overmyer, Tack-Anderson, Blue, Jackson, Griggs and Berlekamp-Crowell are not alleged to have taken any physical action against Burdine, let alone any action that could have constituted excessive force resulting in injury or death to Burdine. They are, accordingly, entitled to summary judgment as to the excessive force claim.

---

[5] Were it necessary to reach this prong, it would be addressed by the analysis of objective reasonableness for Fourth Amendment violations, discussed *infra*, and therefore redundant.

I will analyze each of the remaining defendants, Daniels, Conger, Dickey, Kaiser, White and Myers, individually.

### 1. Officer Daniels

Daniels' actions on August 11, 2007, consisted of grabbing Burdine's left arm at the scene, lifting Burdine into his cruiser, taking Burdine into the Sandusky County jail, and aiding in holding Burdine's limbs while he struggled and fought against efforts to subdue him in the jail.

Daniels' actions do not here rise to the level of a viable allegation of excessive force. Burdine was a flailing, spitting, biting threat to the officers around him and potentially to himself as well. At all times, Daniels sought to keep Burdine from lashing out and hurting other officers (as Burdine still managed to do repeatedly despite the officers' efforts). Grappling with a resistant subject to subdue him does not constitute excessive force. *See, e.g., Gaddis ex rel. Gaddis v. Redford Twp.,* 364 F.3d 763, 772 (6th Cir. 2004) (holding that grappling with an incoherent, disturbed subject who was attempting to resist and evade arrest was not excessive force); *Thacker v. Lawrence Cnty.,* 182 Fed. Appx. 464 (6th Cir. 2006) (unpublished disposition) (holding that grappling with a resistant subject was not excessive force even after the struggle led to the officers and subject wrestling on the ground).

A reasonable officer in Daniels' situation, facing a struggling, attacking suspect who was resisting arrest and efforts to provide medical assistance, does not violate the Fourth Amendment by attempting to physically restrain such a prisoner.

Qualified immunity applies to Officer Daniels with regard to plaintiff's § 1983 claim.

### 2. Officer Conger

9

Conger is not accused of any specific role in Burdine's arrest and transportation other than general assistance. Even assuming he aided in holding Burdine down during either his initial arrest or subsequent attempts to subdue him at the Sandusky County Jail, such efforts were objectively reasonable in light of the threat Burdine posed to himself and the officers, and Burdine's continued efforts to resist arrest.

Qualified immunity applies to Officer Conger with regard to plaintiff's § 1983 claim.

### 3. Officer Dickey

Dickey's actions on August 11, 2007, consisted of grabbing Burdine's left arm at the scene, pepper spraying Burdine once after a warning that he would do so if Burdine did not stop resisting arrest, lifting Burdine into Daniels' cruiser, helping hold Burdine down at the Sandusky County Jail, and holding Burdine's forehead after Burdine bit Kaiser.

The lawful use of chemical weapons such as pepper spray in effecting an arrest is dependent on the same reasonableness standards as the rest of the excessive force claim. *Vaughn v. City of Lebanon*, 18 Fed.Appx. 252, 266 (6th Cir. 2001) (unpublished disposition) (citing *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir.1994)):

> the analysis for use of a chemical weapon as force is essentially the same as that for the use of more traditional forms of physical control, turning upon the totality of the circumstances, including the arrestee's conduct and the officer's reasonable perception of the scenario.

When Dickey sprayed Burdine, Burdine was resisting arrest and lashing out at police officers by kicking and spitting. Dickey used pepper spray only after a warning that he would spray Burdine if Burdine continued to resist – which Burdine did. Dickey's actions were a reasonable attempt under the circumstances to control a resisting subject who posed a physical danger to the officers.

The only other action that differs from prior analyses of Daniels and Conger's behavior is that Dickey held Burdine's head back by the forehead after Burdine bit Kaiser. Dickey's actions were an attempt to prevent further injury to his fellow officers by a resisting, violent subject, and were reasonable under the circumstances.

Qualified immunity applies to Officer Conger with regard to plaintiff's § 1983 claim.

### 4. Deputy Kaiser

Kaiser's relevant actions on August 11, 2007, consisted of carrying Burdine into the shower room, attempting to lift him up and into the shower, attempting to draw Burdine's arms close enough to handcuff him, and placing a knee in Burdine's back to keep Burdine from rising while attempting to handcuff him.

Having established that mere grappling with a resistant subject does not constitute excessive force, the relevant inquiry is whether Kaiser's knee in Burdine's back constituted excessive force. The Sixth Circuit dealt with a similar situation in *Goodrich v. Everett*, 193 Fed. Appx. 551, 557 (6th Cir. 2006) (unpublished disposition), where it found that a knee in the back of a subject that "was capable of violence and inclined to flee" was reasonable under the circumstances.. Burdine violently resisted all efforts to restrain and control him, from the moment of his arrest until he was placed on the backboard and wheeled out of the jail. The need to keep Burdine from rising while officers were attempting to restrain him was clear and obvious under the circumstances.

Qualified immunity applies to Deputy Kaiser with regard to plaintiff's § 1983 claim.

### 5. Deputy White

White's relevant actions on August 11, 2007, included grappling with Burdine as he resisted in the shower room.

11

White's actions were objectively reasonable for the same reasons that Officers Daniels, Conger and Dickey's were – White was grappling with a resisting subject who posed a physical threat to fellow officers, and White took necessary and reasonable actions to restrain him.

Qualified immunity applies to Deputy White with regard to plaintiff's § 1983 claim.

### 6. Sergeant Myers

Myers' relevant actions on August 11, 2007, included applying a taser in drive stun format to Burdine three times: first to the back of his left leg, then to Burdine's lower back, then again to the back of Burdine's leg.

The Sixth Circuit's standard for the reasonable use of a taser is similar to that for the use of pepper spray. *See Caldwell v. Woodford Cnty.*, 968 F.2d 595, 600-01 (6th Cir. 1992). Myers used the taser only after Burdine had repeatedly attacked, bitten and resisted officers who were attempting to get him in the shower to wash off his pepper-sprayed face. Myers warned Burdine prior to each application of the taser. After the first application, Burdine kicked White in the face, and Myers used the taser on Burdine's lower back. After continued resistance, Myers applied the taser a third and final time, to no apparent effect.

Burdine was at all times an actively resisting subject over whom the officers did not have control. Multiple taser applications in drive stun format while multiple officers are attempting to subdue a still-resisting suspect are objectively reasonable. *See, e.g., Sheffey v. City of Covington*, 2012 WL 28056, *12 (E.D. Ky. 2012).

Qualified immunity applies to Sergeant Myers with regard to plaintiff's § 1983 claim.

### 7. Causal Link

Plaintiff has shown no causal link between Kaiser's actions – or those of any other officer – and the injuries they claim led to Burdine's death. Plaintiff's expert witness first declared that Burdine was strangled; he later changed his opinion to state that Burdine was either strangled or somehow asphyxiated through pressure to the back. The latter theory, plaintiff's expert admits, would not result in the allegedly fatal injuries to the throat and thyroid cartilage, nor would it explain the autopsy finding that Burdine died from cardiac arrest brought on by drug-induced delirium or why that finding was in error. It also fails to account for Burdine's continued shouting, chanting and vomiting during and after Kaiser's application of pressure to his back.

The expert's present position, accordingly, fails to create an issue needing jury resolution. Plaintiff has failed to show any use of excessive force that would have resulted in the injuries Burdine sustained that they allege led to his death.

### 8. Summary Judgment on the § 1983 Claim

As the actions of each officer were objectively reasonable under the Fourth Amendment, plaintiff has failed to show a constitutional violation. I grant summary judgment to defendants on plaintiff's § 1983 claims.

### B. State Law Claims

Plaintiff asserts wrongful death, negligence and gross negligence claims against defendants. Defendants argue that they are immune from plaintiff's state law claims.

Ohio law grants presumptive immunity to political subdivisions and their employees, absent certain exceptions. In relevant part, political subdivisions are only liable in the following situations, as detailed in ORC § 2744.02(B):

> (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property

13

caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

\*\*\*

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code.

Police services are defined as a governmental, rather than proprietary, function in Ohio. ORC § 2744.01(C)(2)(a), and so the lower standard of negligence in the course of performing proprietary functions afforded by ORC § 2744.02(B)(2) cannot apply. Plaintiff has alleged no violation of law meeting the other statutory exceptions to immunity, such as injury due to a government building's physical defect or other express imposition of civil liability under the Ohio Revised Code.

Employees of political subdivisions are also entitled to presumptive immunity. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 270 (2007). Exceptions to that immunity are listed at ORC § 2744.03(6):

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the

14

Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

In this case, the acts of each employee were manifestly within the scope of their duties - police officers attempting to restrain and bring under control a subject who was violently resisting their efforts. Their actions were objectively reasonable under the Fourth Amendment. With regard to state law, no rational jury could find that the officers acted with malicious purpose, in bad faith or in a wanton or reckless manner.[6] Ohio law does not establish any express civil liability for employees of political subdivisions in the Revised Code.

Plaintiff has failed to establish that any of the exceptions to employee immunity apply in this case.

All defendants are immune from suit on plaintiff's state law claims, and so I grant defendants' motions for summary judgment.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendants' motions for summary judgment [Docs. 140, 142] be, and the same hereby are granted.

---

[6] This also disposes of plaintiff's claims for negligence and gross negligence. The minimum standard for imposing liability is acting in a wanton or reckless manner, which is a higher standard than mere negligence or gross negligence. *Jones v. Lucas Cty. Sheriff's Med. Dept.*, 2012 WL 1075180, *2 (Ohio App. 2012).

15

So ordered.

<u>s/James G. Carr</u><br>
Sr. United States District Judge